**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ALLAN REFORD, on Behalf of Himself and All Others Similarly Situated,<br><br>      Plaintiff,<br><br>  v.<br><br>SOLAREDGE TECHNOLOGIES INC., SOLAREDGE TECHNOLOGIES LIMITED, ZVI LANDO and RONEN FAIER,<br><br>      Defendants. | Case No. _____<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiff Allan Reford ("Plaintiff"), on behalf of himself and all others similarly situated, by and through his undersigned counsel, hereby brings this Class Action Complaint for Violation of Federal Securities Laws ("Complaint") against SolarEdge Technologies Inc. ("SolarEdge" or the "Company"); SolarEdge Technologies Limited ("SolarEdge Ltd."), a subsidiary of SolarEdge Technologies, Inc., ("SolarEdge Ltd"); Zvi Lando ("Lando"), the Company's former board member and Chief Executive Officer at all relevant times; and Ronen Faier ("Faier"), SolarEdge's Chief Financial Officer at all relevant times (collectively, the "Individual Defendants," and together with SolarEdge, "Defendants"), based upon, *inter alia*, the investigation conducted by counsel, which included a review of SolarEdge's public documents, conference calls, and announcements, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding SolarEdge, analysts' reports and advisories about SolarEdge and other information. Plaintiff's counsel's investigation into the matters alleged herein is ongoing and many relevant facts are known only to, or are exclusively within the custody or control of, the Individuals Defendants. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired common shares of SolarEdge stock between August 6, 2022 to October 19, 2022, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violation of the federal securities laws under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against SolarEdge, its subsidiary and certain of its top officials.

2.      SolarEdge is incorporated in the state of Delaware and its principle executive offices are located at 700 Tasman Dr., Milpitas, California 95035. SolarEdge provides solar power

optimization and photovoltaic ("PV") monitoring solutions for solar energy systems, offering optimizers, inverters, monitoring equipment, tools, and accessories for power harvesting, conversion, and efficiency while serving  customers worldwide. Two main parts of SolarEdge's solar energy systems are its power optimizers and inverters. A power optimizer can be described as a direct current to direct current ("DC to DC") converter technology developed to maximize the energy harvest from solar PV systems. An inverter, also referred to as the "brains" of a solar energy system, converts the DC power (or "raw" energy) from the PV modules into alternating current ("AC") power (or "usable" energy) that runs in a user's home.

3.      SolarEdge readily admits that inverters have "critical" importance because while inverters account for less than 10% of system cost, those components manage 100% of system production and are "critical for the long term financial performance of a PV system as it can maximize energy production and reduce lifetime costs." Since SolarEdge started commercialized shipments of solar energy systems in 2010, over 3.7 million inverters and 89 million power optimizers were shipped worldwide.

4.      Throughout the Class Period, Defendants made materially false and misleading statements, and failed to disclose material adverse facts about the Company's business, operational, and compliance policies. Specifically, Defendants made false and/or misleading statements and failed to disclose to investors that: (i) the designs of the power optimizers, inverters, and components thereof used to develop SolarEdge's products potentially originated with and were misappropriated from Ampt LLC ("Ampt"), a competitor in the renewable energy industry; (ii) Ampt made claims against the Company for misappropriating Ampt's patented technology, (iii) evidentiary support existed for the allegations that SolarEdge misappropriated certain patents relating to the design and development of the Company's power optimizers and inverters; (iv) as

a result, SolarEdge faced a threat of regulatory and/or court action, which could prohibit the import, marketing, and sale of its power optimizers and inverters, including solar energy systems that contain such products; which in turn (v) seriously threatened SolarEdge's ability to monetize on their solar energy systems that contain the power optimizers and inverters in the United States and generate revenue; and (vi) certain revenues generated from the sale of power optimizers and inverters were potentially based on SolarEdge's unlawful activities, including the misappropriation of patented designs by Ampt.

5.      The investing public learned of this alleged patent infringement on July 28, 2022 when the U.S. International Trade Commission ("ITC") agreed to review a patent infringement case filed by Ampt against SolarEdge on July 28, 2022. The news of the ITC's vote to institute an investigation of SolarEdge on August 29, 2022 caused a precipitous and immediate decline in the price of SolarEdge shares. While SolarEdge's stock price opened at $284.23 on August 29, 2022, the news of ITC's vote resulted in SolarEdge's stock price to fall approximately 1.4% to close at $279.46 on August 29, 2022. This news caused SolarEdge to lose market capitalization of $265 million on August 29, 2022.

6.      But the bad news were far from over. On October 19, 2022, investors learned the gravity of the ITC's investigation when Judge Connolly in the District Court of Delaware stayed a parallel proceeding filed against SolarEdge by Ampt and based on substantially similar allegations, styled *Ampt, LLC v. SolarEdge Tech., Inc.*, No. 1:22-cv-00997 (D. Del.) ("Delaware Proceeding") pending the ITC's investigation. On this news, shares of SolarEdge stock fell 2.3% to close at $199.46 on October 19, 2022.

7.      As a result of SolarEdge's wrongful acts and omissions, and the precipitous decline in the market value of SolarEdge's common shares, Plaintiff and other Class members have

suffered significant losses and damages.

## JURISDICTION AND VENUE

8.      The claims asserted herein arise under Section 10(b) and 20(a) of the Exchange Act (15 U.S.C. § 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

9.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

10.     Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b), as the alleged misstatements and omissions were made or omitted, and the subsequent damages took place in this Judicial District. Pursuant to SolarEdge's most recent quarterly report (SEC Form 10-Q), as of August 4, 2022, there were 55,635,089 shares of SolarEdge's common stock outstanding. SolarEdge's common stock trades on the Nasdaq Composite ("NASDAQ") under the ticker symbol "SEDG." Accordingly, there are presumably hundreds, if not thousands, of investors in SolarEdge's common stock located within the U.S., some of whom undoubtedly reside in this judicial district.

11.     In connection with the acts alleged in this Complaint, SolarEdge, directly or indirectly, used the instrumentalities of interstate commerce, including interstate wires, U.S. Postal Service mail, wireless spectrum, and the national securities exchange.

## PARTIES

12.     Plaintiff, as set forth in the attached Certification(s), incorporated by reference herein, acquired SolarEdge shares during the Class Period, at artificially inflated prices, and was damaged by the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

13.     Defendant SolarEdge is a Delaware publicly traded company with its principle

executive offices at 700 Tasman Dr., Milpitas, California. SolarEdge shares trade on the NASDAQ under the ticker symbol "SEDG."

14.     Defendant SolarEdge Limited is a wholly owned SolarEdge subsidiary with its headquarters at 1 HaMada St., Herzliya, Israel.

15.     Defendant Zvi Lando has served as SolarEdge's Chief Executive Officer at all relevant times. Lando signed or authorized the signing of the Company's quarterly and annual reports filed with the SEC.

16.     Defendant Ronen Faier has served as SolarEdge's Chief Financial Officer at all relevant times. Faier signed or authorized the signing of the Company's quarterly and annual reports filed with the SEC.

17.     Defendants Lando and Faier are sometimes referred to herein as the "Individual Defendants." The Individual Defendants, together with SolarEdge, are sometimes referred to herein as the "Defendants."

18.     The Individual Defendants possessed the authority to control the contents of statements made by SolarEdge's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.,* the market. The Individual Defendants were provided with copies of SolarEdge's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Due to their positions with SolarEdge, and their access to SolarEdge's material information that was unavailable to the public, the Individual Defendants knew that the adverse facts described herein were not disclosed to and were being concealed from investors. The Individual Defendants are liable for the false statements and omissions alleged herein.

## SUBSTANTIVE ALLEGATIONS

### A.      Background

19.      Founded in 2006, SolarEdge is a Delaware company with its principle executive offices at 700 Tasman Dr. Milpitas, California. SolarEdge common shares are traded on the NASDAQ under the ticker symbol "SEDG." SolarEdge is considered a top provider of commercial and residential solar photovoltaic systems ("solar PV systems") and describes itself as a "leading provider of an optimized inverter solution that changed the way power is harvested and managed in photovoltaic [PV] systems."

20.      Since 2010, SolarEdge began offering commercial shipments of products for solar PV systems, and shipped approximately 29.5 gigawatts ("GW") of DC optimized inverter systems, having their products installed in solar PV systems in 133 countries. As of December 31, 2021, SolarEdge has shipped, in the aggregate, approximately 83.9 million power optimizers and 3.5 million inverters.[1]

21.      SolarEdge's 2021 Annual Report provides that SolarEdge sells its products indirectly to thousands of solar installers through large distributors and electrical equipment wholesalers and directly to large solar installers and engineering, procurement, and construction firms ("EPCs"). Its customers include providers of solar PV systems as well as residential and commercial end users, key solar distributors, and electrical equipment wholesalers, and several PV module manufacturers that offer PV modules with SolarEdge's power optimizer physically embedded into their modules.[2]

22.      Two main components of certain solar PV systems are power optimizers and

---

[1] See SolarEdge 2021 Sustainability Report, available at https://www.solaredge.com/sites/default/files/annual_sustainability_report_2021.pdf
[2] SolarEdge 2021 Annual Report.

6

inverters, which are designed to help these systems generate higher efficiency. Simply put, power optimizers are developed to maximize the energy harvest from the sun, and inverters are the "brains" of a solar energy system that convert the "raw" energy from the PV modules into "usable" energy that runs in a user's home.

### B.    Ampt Accuses SolarEdge of Misappropriating Its Patented Technology

23.    On July 28, 2022, Ampt, a competitor of SolarEdge, filed a complaint in the United States District Court for the District of Delaware, as well as with the ITC, claiming that SolarEdge's (i) power optimizers for solar power systems, (ii) inverters for solar power systems, and (iii) components thereof ("the Accused Products") infringed on one or more of Ampt's patents. SolarEdge receives the Accused Products from SolarEdge Ltd., SolarEdge's wholly owned subsidiary, which it then sold throughout the United States.

24.    Litigating in the ITC is an aggressive approach to patent litigation. The speed, extensive discovery, and threat of an exclusion order can put a real strain on respondents' businesses. Section 337 investigations are expedited, and a final determination is typically issued within 15 to 18 months – a sharp contrast from typical district court patent litigation, which can drag on for years.

25.    Weeks later, on August 29, 2022, the ITC issued a statement that the ITC voted to investigate the underlying allegations of the complaint filed by Ampt against SolarEdge. The ITC said, in relevant part:[3]

> *The U.S. International Trade Commission (USITC) voted to institute an investigation of certain solar power optimizers, inverters, and components [of SolarEdge]* . . . . The investigation is based on a complaint filed by Ampt, LLC of Fort Collins, CO on July 28, 2022. The complaint, as supplemented, alleges violations

---

[3] United States International Trade Commission, *USITC Institutes Section 337 Investigation of Certain Solar Power Optimizers, Inverters, and Components Thereof,* August 29, 2022, *available at* https://www.usitc.gov/press_room/news_release/2022/er0829ll1976.htm.

of section 337 of the Tariff Act of 1930 in the importation into the United States and sale of certain solar power optimizers, inverters, and components thereof that infringe patents asserted by the complainant… The USITC has identified the following as the respondents this investigation: SolarEdge Technologies, Inc. of Milpitas, CA; and SolarEdge Technologies, Ltd. of Herzliya, Israel.[4]

26.     This news caused a precipitous and immediate decline in the price of SolarEdge shares; all gains were lost when the ITC issued its statement, resulting in SolarEdge's stock price to close at $279.46, on August 29, 2022.

27.     SolarEdge attempted to assuage investors' concerns by downplaying the meritoriousness of Ampt's allegations, stating that Ampt "ha[s] been litigating a dispute involving a patent family filed by SolarEdge and a patent family filed by Ampt before the United States Patent and Trademark Office [("USPTO")] for many years," that "it appears that having lost before the USPTO, Ampt is now shopping around its claims to other courts." SolarEdge then added that the Company "anticipates a vigorous defense" of these new cases.[5]

28.     Finally, on October 19, 2022, the federal judge presiding over the Delaware Proceeding stayed the Delaware Proceeding pending the findings of the ITC's investigation. The decisions to stay the Delaware Proceeding made clear that the findings of the ITC will likely have a direct impact on the Delaware Proceeding and the potential import ban on SolarEdge's vital patents. On this news, shares of SolarEdge stock fell $4.79 to close at $199.46, on October 19, 2022.

29.     Up until this news, the investing public had no reason to suspect that the Company's ability to monetize on their power optimizers and inverters was at jeopardy by virtue of the

---

[4] Unless otherwise stated, all emphasis is added, and internal citations are omitted.
[5] *SolarEdge Technologies faces import ban at U.S. ITC launches probe,* REUTERS, August 29, 2022, https://finance.yahoo.com/news/solaredge-technologies-faces-import-ban-035004999.html?ocid=iehpP; *see also* Ryan Kennedy, *SolarEdge under investigation for alleged patent violations,* PV MAGAZINE, August 31, 2022, https://www.pv-magazine.com/2022/08/31/solaredge-under-investigation-for-alleged-patent-violations/.

potential ITC investigation and ruling against SolarEdge and in favor of Ampt — a fact known to the Company executives, yet never disclosed to SolarEdge's investors.

### C.    Materially False and Misleading Statements Issued During the Class Period

30.    The Class Period begins on August 6, 2020, which is the approximate time the alleged patent infringement began, as the Ampt ITC Complaint provides. On this date, SolarEdge filed its 10-Q report, which states, in pertinent part:[6]

> There have been no material changes to our "Risk Factors" as discussed in Part I, Item 1A, "Risk Factors" in our Annual Report on Form 20-K for the year ended December 31, 2019 and in Part II, Item 1A, "Risk Factors," in our quarterly report on Form 10Q for the quarter ended March 31, 2020.

31.    This statement was materially false and misleading because at the time SolarEdge's 10-Q was filed, the Company strategically omitted that the technology SolarEdge began to commercialize was in part based on or derived from misappropriated technology owned by Ampt.

32.    On February 19, 2021 SolarEdge filed its annual Form 10-K, which states, in pertinent part:[7]

> []2021, we reached full manufacturing capacity in our manufacturing facility located in the North of Israel 'Sella 1', from which we began commercial shipments to the U.S. of optimizers and inverters in 2020. The proximity of Sella 1 to our R&D team and labs enables us to accelerate new product development cycles as well as define equipment and manufacturing processes of newly developed products which can then be adopted by our contract manufacturers worldwide.
>
> *                *                *
>
> **In the third quarter of 2020 we began commercial shipments to the United States of optimizers and inverters from Sella 1**, which reached full manufacturing capacity in the second quarter of 2021.

---

[6] SolarEdge 2020 3Q 10-Q Report at 21.
[7] SolarEdge 2021 Annual Report at 11, 43. See also Complaint at 11, Certain Solar Power Optimizers, Inverters, and Components Thereof, Inv. No. 337-TA-1327, USITC Pub. 3630 (July 28, 2022) (Investigation) ("Ampt ITC Cmp.") (citing SolarEdge 2021 Annual Report, alluding that the patent infringement potentially started around Q3 2020, stating "[o]n information and belief, SolarEdge Inc. imports into and sells within the United States the Accused Products that use Ampt's patented technology.").

33.     When discussing Intellectual Property, SolarEdge's 2021 Annual Report stated, in

relevant part:[8]

> ***Our success depends to a significant degree on our ability to
> protect our intellectual property and other proprietary rights***. We
> rely on a combination of patents, trademarks, copyrights,
> trade secrets, and unfair competition laws, as well as confidentiality and
> license agreements and other contractual provisions with our
> customers, suppliers, employees, and others, to establish and protect
> our intellectual property (IP) and other proprietary rights. Our ability
> to enforce these rights is subject to litigation risks, as well as
> uncertainty as to the enforceability of our IP rights in various
> countries, specifically claims that our IP rights are invalid or
> unenforceable. Our assertion of IP rights may result in another party
> seeking to assert claims against us, which could harm our business.
> Our inability to enforce our IP rights under any of these
> circumstances can harm our competitive position and business.

34.     This statement was materially false and misleading because at the time SolarEdge's

10-K was filed, the Company knew Ampt was challenging the designs of its power optimizers and

inverters. This statement was also present in SolarEdge's 2022 10-K report.[9]

35.     When discussing the risk related to third parties asserting claims of intellectual

property infringement, SolarEdge's 2021 Annual Report stated, in relevant part:[10]

> Third parties ***may*** assert that we are infringing upon their intellectual
> property rights, which ***could*** divert management's attention, cause
> us to incur significant costs, and prevent us from selling or using the
> technology to which such rights relate.
>
> Our competitors and other third parties hold numerous patents
> related to technology used in our industry. Occasionally, ***we may***
> also be subject to claims of intellectual property right infringement
> and related litigation, and, as we gain greater recognition in the
> market, ***we face a higher risk*** of being the subject to claims of
> violation of others' intellectual property rights.
>
> *     *     *

---

[8] SolarEdge 2021 Annual Report at 25.
[9] SolarEdge 2022 Annual Report at 32.
[10] SolarEdge 2021 Annual Report at 25.

10

> ***While we believe that our products and technology do not infringe
> in any material respect upon any valid third-party IP rights, we
> cannot be certain of successfully defending against any such
> claims.*** If we do not successfully defend or settle an IP claim, we
> could be liable for significant monetary damages and could be
> prohibited from continuing to use certain technology, business
> methods, content, or brands. To avoid a prohibition, we could seek
> a license from the applicable third party, which could require us to
> pay significant royalties, increasing our operating expenses. If a
> license is unavailable at all or unavailable on reasonable terms, we
> may be required to develop or license a non-violating alternative,
> either of which could require significant effort and expense. If we
> cannot license or develop a non-violating alternative, we could be
> forced to modify, limit or, in extreme cases, stop manufacturing and
> sales of our affected products in the relevant country and may be
> unable to effectively compete. Any of these results could adversely
> affect our business, financial condition, and results of operations.

36.     SolarEdge made material misstatements and/or failed to disclose the potential

infringement claims. Instead, SolarEdge's 2022 Annual Report filed with the SEC on February 22,

2022 stated, in relevant part:[11]

> ***Compliance with various regulatory requirements and standards
> is a prerequisite for placing our products on the market in most
> countries in which we do business***. We have all such certifications
> but there are at times, challenges by local administrative
> telecommunications, consumer board or other authorities that can
> place sales bans on products.

37.     SolarEdge's Annual Reports from 2018 to 2020 made nearly identical statements.[12]

**D.     The Truth Begins to Emerge**

38.     On August 8, 2022, PV Magazine issued a news article titled "Ampt lawsuit asks

that SolarEdge remove inverters and controllers from market" ("PV Magazine Article"), which

reported a previously filed lawsuit filed by Ampt alleging that SolarEdge was infringing on one or

---

[11] *Id.* at 31.
[12] SolarEdge 2020 Annual Report at 25; SolarEdge 2019 Annual Report at 22; SolarEdge 2018 Annual Report at 22.

more claims of Ampt's patents.[13] In the PV Magazine Article, it summarized the claims against

SolarEdge, while also noting the highly suspect comparison of a SolarEdge power optimizer and

their patented designs as mentioned above.

39.     The PV Magazine article did receive a response by SolarEdge, in which SolarEdge

attempted to soften the blow caused by the news:[14]

> SolarEdge and AMPT have been litigating a dispute involving a
> patent family filed by SolarEdge and a patent family filed by AMPT
> before the United States Patent and Trademark Office (USPTO) for
> many years. Recently, the USPTO awarded priority of invention to
> SolarEdge, cancelled the claims of AMPT's patents, and awarded
> the patent claims in these AMPT patents to SolarEdge. It appears
> that having lost before the USPTO, AMPT is now shopping around
> its claims to other courts. SolarEdge anticipates a vigorous defense
> of these new cases.

40.     When news broke of PV Magazine's article in the afternoon of August 8, 2022,

SolarEdge's stock declined, closing at $303.11, on August 8, 2022.

41.     On August 29, 2022, the U.S. International Trade Commission issued a statement

that the Agency voted to initiate an investigation based on the complaint filed by Ampt against

SolarEdge. The ITC stated, in relevant part:[15]

> ***The U.S. International Trade Commission (USITC) voted to
> institute an investigation of certain solar power optimizers,
> inverters, and components thereof.*** … The investigation is based
> on a complaint filed by Ampt, LLC of Fort Collins, CO on July 28,
> 2022. The complaint, as supplemented, alleges violations of section
> 337 of the Tariff Act of 1930 in the importation into the United
> States and sale of certain solar power optimizers, inverters, and
> components thereof that infringe patents asserted by the
> complainant…. The USITC has identified the following as the

---

[13] John Fitzgerald Weaver, *Ampt lawsuit asks that SolarEdge remove inverters and controllers from market,* PV MAGAZINE, August 8, 2022, https://pv-magazine-usa.com/2022/08/08/ampt-lawsuit-asks-that-solaredge-remove-inverters-and-controllers-from-market/.

[14] *Id.*

[15] United States International Trade Commission, *USTIC Institutes Section 337 Investigation of Certain Solar Power Optimizers, Inverters, and Components Thereof,* August 29, 2022, https://www.usitc.gov/press_room/news_release/2022/er0829ll1976.htm.

respondents this investigation: SolarEdge Technologies, Inc. of Milpitas, CA; and SolarEdge Technologies, Ltd. of Herzliya, Israel.

*     *     *

By instituting this investigation (337-TA-1327), the USITC has not yet made any decision on the merits of the case.

*     *     *

The USITC will make a final determination in the investigation at the earliest practicable time. Within 45 days after institution of the investigation, the USITC will set a target date for completing the investigation. USITC remedial orders in section 337 cases are effective when issued and become final 60 days after issuance unless disapproved for policy reasons by the U.S. Trade Representative within that 60-day period.

42.    This news caused a precipitous and immediate decline in the price of SolarEdge shares, resulting in SolarEdge's stock price to close at $279.46 on August 29, 2022. The following day, August 30, 2022, SolarEdge shares continued to decline, falling $3.96, or 1.417%, to close at $275.50 on August 30, 2022. As a result, SolarEdge lost more than $265 million in market capitalization in just two trading days.

43.    Finally, on October 19, 2022, Judge Connolly of the District Court of Delaware stayed the Delaware Proceeding pending the findings of the ITC's investigation. This Order apprised the investors of the fact that the Delaware Proceeding was likely to be directly impacted by the ruling of the ITC and will have a direct impact on the potential import ban of SolarEdge's intellectual property. Upon this news, shares of SolarEdge's stock declined 2.3% to close at $199.46, on October 19, 2022.

## CLASS ACTION ALLEGATIONS

44.    Plaintiff brings this action pursuant to Rules 23(a) and (b) of the Federal Rules of Civil Procedure, on its own behalf and as representative of a Class, consisting of all those who purchased or otherwise acquired SolarEdge shares during the Class Period ("Class"); and were

damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants, the officers, and directors of SolarEdge, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

45.     The Class is so numerous and geographically dispersed that joinder of all members is impracticable. Throughout the Class Period, SolarEdge shares were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be readily identifiable from information and records in the possession of Defendants or its agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

46.     Plaintiff's claims are typical of the claims of the other members of the Class. Plaintiff and members of the Class sustained damages from the same wrongful conduct of Defendants. The injuries and damages of each member of the Class were directly caused by Defendants' wrongful conduct in violation of the laws described herein.

47.     The Plaintiff will fairly and adequately protect and represent the interests of members of the Class. Plaintiff is an adequate representative of the Class and has no interest which is adverse to the interests of absent Class members. Plaintiff has retained counsel competent and experienced in class action litigation, including class actions in the financial services industry.

48.     Common questions of law and fact exist as to all members of the Class, which predominate over questions affecting solely individual members of the Class. These common questions of law include, without limitation:

- whether statements made by SolarEdge and the Individual Defendants to investors during the Class Period included misrepresentations of material facts about the severity of the complaints filed by Ampt and the scope and progress of the formal investigation by the ITC against SolarEdge;

- whether SolarEdge and the Individual Defendants acted knowingly or recklessly in issuing false and misleading statements or omitting material information that would correct the misstatements;

- whether SolarEdge and the Individual Defendants' acts as alleged herein constituted violations of the federal securities laws;

- whether the prices of SolarEdge shares during the Class Period were impacted by SolarEdge and the Individual Defendants' conduct described herein;

- injury suffered by Plaintiff and Class members; and

- the appropriate measure of damages suffered by Plaintiff and Class members.

49.     A class action is superior to other methods for the fair and efficient adjudication of the controversy because joinder of all Class members is impracticable. Treatment as a class will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would engender.

50.     Class treatment will also permit the adjudication of claims by many Class members who could not afford individually to litigate claims such as those asserted in this Complaint. The cost to the court system of adjudication of such individualized litigation would be substantial. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications establishing incompatible standards of conduct for SolarEdge

and the Individual Defendants.

51.     Plaintiff is unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## FRAUD ON THE MARKET DOCTRINE

52.     The market for SolarEdge shares was open, well-developed and efficient at all relevant times. As a result of the materially false and/or misleading statements and/or failures to disclose, SolarEdge's shares traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired SolarEdge's shares relying upon the integrity of the market price of SolarEdge shares and market information relating to SolarEdge and have been damaged thereby.

53.     During the Class Period, the artificial inflation of SolarEdge's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about SolarEdge's business, prospects, and operations. These material misstatements and/or omissions created an unrealistically positive assessment of SolarEdge's financials and its business, operations, and prospects, thus causing the price of the Company's shares to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the SolarEdge's shares. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing SolarEdge shares at such artificially inflated prices, and each of them has been damaged as a result.

54.     Plaintiff will rely upon the presumption of reliance established by the fraud-on-the-market doctrine as:

16

- SolarEdge and the Individual Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- these misrepresentations and omissions were material to Plaintiff and the Class;

- SolarEdge shares were traded on the NASDAQ and were covered by numerous analysts;

- SolarEdge shares were liquid and traded with significant volume during the Class Period;

- the misrepresentations and omissions alleged herein would likely induce a reasonable investor to misjudge the value of the SolarEdge shares; and

- Plaintiff and Class members purchased and/or sold SolarEdge shares between the time SolarEdge and the Individual Defendants misrepresented or failed to disclose material facts and the time the true facts were disclosed, without knowledge of the misrepresented or omitted facts.

55.    As a result of the foregoing, the market for SolarEdge shares promptly digested current information regarding SolarEdge from all publicly available sources and reflected such information in SolarEdge's share price. Under these circumstances, all purchasers of SolarEdge's shares during the Class Period suffered similar injury through their purchase of SolarEdge's shares at artificially inflated prices. Thus, a presumption of reliance applies.

56.    Accordingly, Plaintiff and Class members are entitled to a presumption of reliance upon the integrity of the market.

57.    In the alternative, Plaintiff and Class members are entitled to a presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128 (1972), because Defendants omitted material information during the Class

Period violating a duty to disclose such information as described above. Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions. Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## LOSS CAUSATION

58.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

59.     During the Class Period, Plaintiff and the Class purchased SolarEdge's shares at artificially inflated prices and were damaged thereby. The price of SolarEdge shares significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## NO SAFE HARBOR

60.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to the allegedly false statements and omissions pled in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and circumstances. To the extent certain of the statements alleged to be false and misleading may be characterized as forward-looking, they were not adequately identified as "forward-looking" statements when made, and were not accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor

18

is intended to apply to any forward-looking statements pled herein, SolarEdge and the Individual Defendants are liable for those false and misleading forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false and misleading, and/or the forward-looking statement was authorized and/or approved by an executive officer of SolarEdge who knew that those statements were false and misleading when made.

## SCIENTER ALLEGATIONS

61.     As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of SolarEdge were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, SolarEdge and Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding SolarEdge, their control over, and/or receipt and/or modification of SolarEdge's allegedly materially misleading misstatements, participated in the fraudulent scheme alleged herein.

62.     Defendants knew and/or recklessly disregarded the falsity and misleading nature of the information that they caused to be disseminated to the investing public. The fraudulent scheme described herein could not have been perpetrated during the Class Period without the knowledge and complicity or, at least, the reckless disregard of the personnel at the highest levels of SolarEdge, including the Individual Defendants.

63.     The Individual Defendants, because of their positions with SolarEdge, made and/or controlled the contents of the SolarEdge's public statements during the Class Period. Each Defendant was provided with or had access to the information alleged herein to be false and/or

misleading prior to or shortly after their issuance and had the ability and opportunity to prevent

their issuance or cause them to be corrected. Because of their positions and access to material non-

public information, these Defendants knew or recklessly disregarded that the adverse facts

specified herein had not been disclosed to and were being concealed from the public and that the

positive representations that were being made were materially false and misleading. As a result,

each of these Defendants is responsible for the accuracy of SolarEdge's corporate statements and

are therefore responsible and liable for the representations contained therein.

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

**(Violation of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder)
Against All Defendants**

64.     Plaintiff hereby incorporates each preceding and succeeding paragraph as though

fully set forth herein.

65.     During the Class Period, SolarEdge and the Individual Defendants, individually and

in concert, directly or indirectly, disseminated or approved false statements which they knew or

deliberately disregarded in that they contained misrepresentations and failed to disclose material

facts to make the statements made not misleading.

66.     SolarEdge and the Individual Defendants violated § 10(b) of the 1934 Act and Rule

10b-5 by: (a) making false statements of material facts or omitted to state material facts needed to

make the statements not misleading; or (b) engaging in acts and practices that operated as a fraud

or deceit upon Plaintiff and others similarly situated in connection with purchases of SolarEdge

shares during the Class Period.

67.     SolarEdge and the Individual Defendants acted with scienter because they knew

that the statements issued in the name of SolarEdge were materially false and misleading; knew

that these statements would be disseminated to investors; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of these statements as primary violations of securities laws. SolarEdge and the Individual Defendants, through receipt of information reflecting true facts about SolarEdge, their control over, and/or receipt of or modification to SolarEdge's allegedly materially misleading statements, which made them aware of SolarEdge's confidential proprietary information, participated in the fraudulent scheme complained of herein.

68. The Individual Defendants had actual knowledge of material omissions and/or the falseness of material statements set forth by SolarEdge, and intended to deceive Plaintiff and Class members, or at a minimum, recklessly disregarded the truth through their failure to ascertain and disclose the truth in statements made by them or other SolarEdge employees to investors, including Plaintiff and Class members. These misrepresentations and omissions were material. A reasonable investor would consider the facts—such as the severity of the formal investigation by the ITC — important in deciding whether to buy shares of SolarEdge stock and would have viewed the aggregate of information available to be significantly altered by the disclosure of this and other material facts

69. Pursuant to the foregoing, the price of SolarEdge shares was artificially inflated during the Class Period. Due to their lack of knowledge of the false nature of statements made by SolarEdge and the Individual Defendants, Plaintiff and Class members relied on the statements made by SolarEdge and the Individual Defendants and/or the integrity of the market price of SolarEdge shares during the Class Period in purchasing SolarEdge shares at prices that were artificially inflated due to false and misleading statements made by SolarEdge and the Individual Defendants.

70.     Were Plaintiff and Class members made aware that the market price of SolarEdge shares was artificially and falsely inflated by misleading statements made by SolarEdge and the Individual Defendants, and by material adverse information that SolarEdge and the Individual Defendants failed to disclose, they would not have purchased SolarEdge shares at artificially inflated prices, or purchased them at any price.

71.     Based on the wrongful conducts alleged herein, Plaintiff and Class members have suffered damages in an amount to be determined at trial.

72.     SolarEdge and the Individual Defendants violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to Plaintiff and Class members for significant damages suffered via their purchases of SolarEdge shares during the Class Period.

## SECOND CLAIM FOR RELIEF

**(Violation of Section 20(a) of the Exchange Act)**
**Against the Individual Defendants**

73.     Plaintiff hereby incorporates each preceding and succeeding paragraph as though fully set forth herein.

74.     During the Class Period, the Individual Defendants were involved in the management and operation of SolarEdge's business affairs. Due to their senior positions, they had knowledge of adverse non-public information regarding SolarEdge's business model, strategy, valuation, and revenue targets and goals and false representations in connection therewith.

75.     As directors and/or officers of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information regarding SolarEdge's financial condition and results of operations, and to correct any public statements issued by SolarEdge which were materially false or misleading.

76.     Due to their positions of authority at SolarEdge, the Individual Defendants

controlled the contents of various public filings, press releases and reports which SolarEdge disseminated in the market during the Class Period. During the Class Period, the Individual Defendants utilized their authority to cause SolarEdge to execute the wrongful acts alleged herein. The Individual Defendants were therefore "controlling persons" at SolarEdge pursuant to Section 20(a) of the Exchange Act. On this basis, they were participants in the unlawful conduct alleged which caused the prices of SolarEdge shares to be artificially inflated.

77.     Based on the conduct described above, the Individual Defendants are liable for the violations committed by SolarEdge pursuant to Section 20(a) of the Exchange Act.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully demands relief as follows:

A.  Certifying this lawsuit as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, certifying Plaintiff as Class Representative;

B.  Awarding damages in favor of Plaintiff and members of the Class against SolarEdge and the Individual Defendants, jointly and severally, for all damages sustained as a result of SolarEdge's wrongdoing, in an amount to be proven at trial;

C.  Awarding Plaintiff and members of the Class their costs of suit, including reasonable attorneys' fees and expenses, and including expert fees, as provided by law;

D.  Awarding Plaintiff and members of the Class pre- and post-judgment interest at the maximum rate allowable by law; and

E.  Directing such further relief as it may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a jury trial as to all issues triable by a jury.

Dated: November 3, 2022

**LOWEY DANNENBERG, P.C.**

/s/ *Andrea Farah*
Andrea Farah
Alesandra Greco
Vincent R. Cappucci Jr.
44 South Broadway, Suite 1100
White Plains, New York 10601
Telephone: 914-997-0500
Email: afarah@lowey.com
     agreco@lowey.com
     vcappucci@lowey.com

*Counsel for Plaintiff*