N1PQrefC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

ALLAN REFORD, on behalf of
himself and all others
similarly situated

                  Plaintiffs

          v.                              22 Civ. 9423 (JSR)
                                             Conference

SOLAREDGE TECHNOLOGIES, INC.,
et al

                  Defendants

------------------------------x
                                          New York, N.Y.
                                          January 25 2023
                                          10:15 a.m.

Before:

                    HON. JED S. RAKOFF

                                          District Judge

                       APPEARANCES

LOWEY DANNENBERG PC
     Attorneys for Plaintiffs
ANDREA FARAH
MARGARET MacLEAN

ALESANDRA GRECO

GIBSON DUNN & CRUTCHER LLP
     Attorneys for Defendants
CHRISTOPHER BELELIEU
NATHAN STRAUSS


ALSO PRESENT:
EDWIN ISAAC
GREGORY MOMJIAN

N1PQrefC

(In open court; case called)

DEPUTY CLERK:  Everyone please be seated and will the parties draw a microphone near to them and identify themselves for the record.

MS. FARAH:  Good morning, your Honor.  Andrea Farah of Lowey Dannenberg.  Here with me is Margaret MacLean and Alesandra Greco also of Lowey Dannenberg.  With us is our client and plaintiff Mr. Edwin Isaac.

THE COURT:  Good morning.

MR. BELELIEU:  Good morning, your Honor.  Christopher Belelieu from Gibson Dunn & Crutcher, along with my colleague Nathan Strauss and Gregory Momjian on behalf of defendants.

THE COURT:  Good morning.

So we have an unopposed motion to appoint Mr. Isaac as the plaintiff, but even though it's unopposed, my practice is still to make sure that the person is qualified as well as is his law firm.

So, Mr. Isaac, come up and I will swear you in.

(Plaintiff sworn)

DEPUTY CLERK:  Please be seated, state your name, and spell it for the record.

EDWIN ISAAC, having been duly sworn, testified as follows:

MR. ISAAC:  Edwin Isaac, E-D-W-I-N.  Isaac, I-S-A-A-C.

THE COURT:  So, Mr. Isaac, briefly tell me about your background.

MR. ISAAC:  I work at Columbia University as a financial aid and admissions counselor.  I've been working there since 2010, so 13 years now.

THE COURT:  I didn't realize.

So let me just mention when I heard he works at Columbia University.  So I teach at Columbia Law School and receive a salary from Columbia University, not as much as I should get, but still, a reasonable salary.  I don't think technically that causes me to have to recuse myself when we're not talking about a party in the normal sense.  But let me make sure.  I will look into that later today.

I don't know if anyone has any comments on that?

MS. FARAH:  Your Honor, I don't know the answer off the top of my head.  I would agree with you that that does not seem like --

THE COURT:  It's not Columbia's money.  Columbia is not a party, so I don't think I need to recuse myself.

MS. FARAH:  Correct.

THE COURT:  But I just thought I'd mention that.

MS. FARAH:  Sure.  Thank you.

THE COURT:  I'm sure Columbia doesn't pay Mr. Isaac as much as he deserves either, so the -- how did you get involved in this lawsuit?

MR. ISAAC:  Well, I was reviewing information about some different companies that I invested in.  Columbia,

N1PQrefC

unfortunately, one of our -- the facility I work in has the Bloomberg terminal, and I was able to come across some articles pertaining to SolarEdge, of which I'm highly invested in, and I came across a particular article which talked about, you know, what's going on here.  So I reached out to the law firm.

THE COURT:  So but this was your personal investment, right?

MR. ISAAC:  Correct.

THE COURT:  And how did you make contact with Lowey?

MR. ISAAC:  I sent an email to Ms. --

THE COURT:  In response to their online solicitation?

MR. ISAAC:  Correct, to the article I saw online.  There was an email address at the bottom of the article.

THE COURT:  And have you read the complaint?

MR. ISAAC:  I have.

THE COURT:  So what are you claiming was the wrongdoing in this case?

MR. ISAAC:  So, SolarEdge is obviously it's a solar company, but all the technology that they, you know, claim propriety rights to are not necessarily theirs.  So there's, you know, another entity which claims to have ownership of some of the patents that they have.

THE COURT:  Now, did you discuss with counsel what your responsibilities will be as the plaintiff?

MR. ISAAC:  I did.

N1PQrefC

THE COURT:  What are they?

MR. ISAAC:  It's mainly to, you know, stay abreast of what's going on, having to make some decisions on behalf of the other parties -- not parties, but the plaintiff, I guess anybody part of the class action, excuse me, you know, stay abreast of what's going on, and if any motions are happening, dismissals, things of that nature, just to stay on top of that.

THE COURT:  So if there is a proposed settlement, as there often is in these kinds of cases, you understand that while, of course, you will listen to what your counsel has to say, it will be your decision whether to accept that settlement.  You understand that?

MR. ISAAC:  Yes, I understand that.

THE COURT:  And you understand in reaching that decision, you will need to consider not just your own personal investment but the entire class?

MR. ISAAC:  I understand that.

THE COURT:  Very good.

Did you receive or sign a retainer agreement with counsel

MR. ISAAC:  Yes, your Honor.

THE COURT:  Can I see a copy of that, please?

MS. FARAH:  May I approach?

THE COURT:  So this retainer agreement points out that as lead plaintiff, you may be required to give a deposition.

N1PQrefC

Do you understand that?

MR. ISAAC:  Yes, your Honor.

THE COURT:  Now, sometimes the plaintiffs, because they do more work than other members of the class, get paid a small amount of money if the case settles, but that's in the control of the court, and you might wind up getting zero.  You understand that?

MR. ISAAC:  Yes, your Honor.

THE COURT:  Very good.  Did you discuss with counsel their fees?

MR. ISAAC:  As far as what I would have to pay them if I would have to --

THE COURT:  You understand, do you not, that if they lose, you don't have to pay and the class doesn't have to pay anything; but if they win, then they get a percentage of the win determined by the Court?

MR. ISAAC:  Yes, your Honor, I understand that.

THE COURT:  Supposing they came in and said, we're going to ask for 50 percent of the recovery to be given to attorneys because we work really hard, and it was a terrific win.  What are you going to say to them then?

MR. ISAAC:  Well, we didn't really discuss that, but I would be okay with that -- I mean, we'd have to discuss the terms.  We would have to discuss that, but, I mean, it's fine.

THE COURT:  Well, it doesn't sound fine to me, but it

N1PQrefC

was a hypothetical, to say the least.

Okay.  Are there any questions either counsel wanted to put to the witness?

MR. BELELIEU:  Just a couple.

THE COURT:  Go ahead.

MR. BELELIEU:  Mr. Isaac, thank you for your time today.

What are you claiming in terms of your losses today?

MR. ISAAC:  In the filing?  The filing -- well, I mean, I invested almost 200,000 in the -- in SolarEdge, and in the filing I know it's only a portion of that.  So I think that answers your question.  Initially, it was a significantly greater loss that I had when I initially contacted counsel.

MR. BELELIEU:  Let me try to simplify it.  Are you claiming $1,889.30 in losses in the proposed class period?

MR. ISAAC:  That's what it says.  I think that's what it says.  So when she -- when the law firm finally drafted the documents, I think that's what it was at that time.

MR. BELELIEU:  You purchased 660 shares during the proposed class period.  Is that correct?

MR. ISAAC:  Correct.

MR. BELELIEU:  According to Exhibit A of Ms. Farah's declaration, you still retain those 660 shares, right?

MR. ISAAC:  Correct.

MR. BELELIEU:  Do you know what SolarEdge's share

N1PQrefC

price is today?

MR. ISAAC:  I don't know.

MR. BELELIEU:  Isn't it a fact that it is higher than what you purchased the shares at during this class period?

THE COURT:  How can he know that if he doesn't know the price?

MR. BELELIEU:  Withdrawn.

Do you know if you suffered any damages to date currently based on the allegations in this complaint?

MS. FARAH:  Objection.  Your Honor, I don't think these questions are fair for the plaintiff the --

THE COURT:  Well, no, I have to determine if he's an adequate plaintiff.  If he hasn't suffered any loss, that might cast doubt on his adequacy as lead plaintiff.

MS. FARAH:  The question was, has he suffered any damages.  I think it's a little bit of a tricky question.

THE COURT:  I'm sorry?

MS. FARAH:  I think it's a little bit of a tricky question to ask the plaintiff what he suffered.

THE COURT:  A little bit of a trick question?

MS. FARAH:  Yes.

THE COURT:  That's what lawyers are all about, but I don't -- I don't see why it is not relevant, whether he in fact has suffered any loss.

MS. FARAH:  Yeah, whether he in fact suffered loss.  I

think he already answered that question, but to what specific damage has he suffered will be determined later in the case by the use of experts and other resources. I just don't think he is in a position to answer the question.

THE COURT:  Let me ask you.  You presumably do know what the stock is trading at now.  Yes?

MS. FARAH:  Yes, your Honor.  I think the last was 298 that was January 24, I believe.

THE COURT:  And has this particular person suffered a loss?

MS. FARAH:  He did.

THE COURT:  How much?

MS. FARAH:  As of the filing of the lead plaintiff papers, his loss was calculated at $1,886 and some cents.

THE COURT:  And that was calculated based on the stock price as of when?

MS. FARAH:  That was calculated -- at the time when the lead plaintiff papers were filed.

THE COURT:  Let me go back to defense counsel.

So you're saying the stock has risen since then?

MR. BELELIEU:  Yes, it's currently trading around 300 --

THE COURT:  And it could fall tomorrow.  I'm not sure that -- this may be a basis for moving for dismissal or whatever, but I'm not sure it relates to this person because if

N1PQrefC

there's no loss generally, then he's no different from anyone else.  Are you saying you think there are other people who even at the current price have suffered losses who are not being offered as the plaintiff?

MR. BELELIEU:  I don't know that for a fact, your Honor.  I was making sort of two points.  One was the damages point, no damages.  The second is the amount at issue here, given what the PSLRA is driving at preventing lawyer-driven litigation.  Here, we have a plaintiff who has $1,889.30 at issue here.

There's relevant case law for two recent decisions by magistrates in the Eastern District, Judge Cho and Judge Mann.  That was go *Guo v. Tyson Foods*, et al.  1:21 CV 00522.  and then separately *Bosch v. Credit Suisse, et al.* 1:22 CV 02477.  Those of both decisions from September of last year, where the amount at issue in the respective cases was $323.20, and the other one was $621.  Both magistrates refused or denied the motions for lead plaintiff.  There's also a case from 2001 in the Southern District here *In Re Razor Fish, Inc. Securities Litigation,* 143 F. Supp. --

THE COURT:  You're reduced to citing me.  Don't you have any better authority to rely on?

MR. BELELIEU:  There was $40,000 at issue in that case, your Honor, and the lead plaintiff's motion was denied.

THE COURT:  But not just on that ground.

N1PQrefC

MR. BELELIEU:  That's correct.

THE COURT:  There were many, many grounds involved there.

MR. BELELIEU:  That's correct.

THE COURT:  And I have the greatest respect for the magistrates that you just mentioned, two very fine magistrates, even though they are reduced to being in the Eastern District of New York.  I'm familiar at least with Judge Mann's opinion, but I think you overstate what the PSLRA is when taken in the context of Rule 23.

So there is no doubt that the PSLRA was designed to curb what was seen as overly aggressive lawyer-driven litigation resulting in extortion at lawsuits and the like, and therefore they put in a number of provisions designed really to give more responsibility to the plaintiff as opposed to the plaintiff's counsel.  But that doesn't mean -- and there is nothing in the PSLRA, let alone Rule 23, that detracts from the overall purpose of class actions, including securities class actions.  A key part of class actions is to allow people who have suffered small losses, but who are part of a larger class, to get some relief because they could not economically make any sense in bringing their own private lawsuit.  No lawyer would take, even on a contingency basis, a lawsuit for a thousand or $1,800 or whatever.  So the whole point of class actions was to make sure that people in that situation were not left without a

remedy.  And the remedy was by making them part of a class which would then attract lawyers to represent the class because then on a contingency basis they could achieve a meaningful return.

This was the position first stated by Justice Joseph Story, in his famous treatise on equity in the 1840s.  I can't remember, I think it was 1843, but it's been a long time since I read it.  And it was then incorporated into the Federal Rules, and then the rules were dramatically expanded in 1966 through amendments to Rule 23.  And the legislative history of those amendments makes clear that a core purpose of class actions was to always include the small investor or small victim who had suffered small losses and who could never bring a lawsuit by themselves.

Now, the PSLRA sometimes applies to stock where there is some big institutional investor who lost a million dollars or whatever, and there's a clear preference given to that kind of investor in the PSLRA, but I haven't been furnished with any information that there was any investor of that sort in this particular situation, nor has any application been made for the appointment of any such investor.

Let me ask defense counsel, was there some big institutional investor involved in this case?

MR. BELELIEU:  Not that I'm aware of, your Honor.  And I don't disagree with anything you just said or articulated.

I do think though under the PSLRA, there is a concern about whether the plaintiff or the named plaintiff is going to adequately be involved in the case, and that is why the amount at issue of potential losses or purported losses, that's why courts look at that, right?  In other words --

THE COURT:  It's a factor definitely to be looked at. I'm just explaining why I think the analysis is different in a case where there is a big investor or, you know, a pension fund or a union or whatever versus a situation where there's just a bunch of small investors.  So thank you for raising that.

Did you have any other questions you want to put to the witness?

MR. BELELIEU:  Just a couple.

Mr. Isaac, you e-signed a sworn certification in this case, correct?

MR. ISAAC:  Correct.

MR. BELELIEU:  And in the first paragraph, you write: "I have reviewed the complaint and authorized its filing."  Do you recall that language?

MR. ISAAC:  Yeah.

MR. BELELIEU:  Do you know when the complaint was filed in this case?

MR. ISAAC:  Not the specific date, no.

MR. BELELIEU:  And do you know who the named plaintiff is in the complaint?

N1PQrefC

MR. ISAAC:  I am.

MR. BELELIEU:  Do you know -- I'm sorry, I didn't hear your answer.

MR. ISAAC:  I said I am.

MR. BELELIEU:  Are you sure about that?

MR. ISAAC:  Maybe I don't understand your question.

MR. BELELIEU:  I will represent to the Court that the complaint that was filed on November 3, the named plaintiff is Allan Reford?

THE COURT:  That's correct.

MR. BELELIEU:  In other words, so, Mr. Isaac, how did you authorize the filing of the complaint if you are not the named plaintiff?

MR. ISAAC:  I don't understand the question.

MS. FARAH:  Objection.

I'm sorry, your Honor.  Just for completeness, the PSLRA certificate says, "I have reviewed the complaint and authorized its filings and/or the filing of lead plaintiff motion on my behalf."

THE COURT:  Okay.  Any other questions for the witness?

MR. BELELIEU:  Nothing further, your Honor.  Thank you.

THE COURT:  You may step down.  Thank you very much.

(Witness excused)

N1PQrefC

MR. ISAAC:  Thank you.

THE COURT:  So I guess the only other question I have really relates to the questions that were being asked of the witness at the very end.

So this complaint was originally in the name of Allan Reford Ford as a putative class action lead plaintiff.  So what happened to Mr. Reford?

MS. FARAH:  Mr. Reford -- so we decided not to put Mr. Reford as a proposed lead plaintiff.  His losses were very small.  I doubt that he even suffered any losses after the stock has recovered partially.  He has been apprized of the process and has been part of it before and is aware that that was the case.

THE COURT:  What does he do for a living, if you know?

MS. FARAH:  I actually don't know.

THE COURT:  See, what impresses me about Mr. Isaac is he's got the right kind of background that I think makes it very likely that among the investors in this particular situation he would be among the most capable, maybe the most capable to analyze what's going on, which is often not true of small investors.  And I've looked at all the other requirements under both Rule 23 and the PSLRA, and I'm going to grant the motion to appoint Mr. Isaac as lead plaintiff.

MS. FARAH:  Thank you, your Honor.

THE COURT:  Now, Mr. Isaac, do I infer that you would

N1PQrefC

like Lowey Dannenberg to be your lawyers?

MR. ISAAC:  Yes, I do, your Honor.

THE COURT:  What a surprise.  So I will appoint Lowey Dannenberg as counsel for the plaintiffs.

Now, remind me because I forgot to check it before I came on the bench.  Do we have a schedule set up for going forward?

MS. FARAH:  Yes, your Honor.  I believe that the amended complaint would be due two weeks after your order appointing Mr. Isaac as lead plaintiff.

THE COURT:  That will issue today.

MS. FARAH:  And then a motion to dismiss or answer would be due two weeks after that.

THE COURT:  That sounds fine.  Thank you for reminding me.  So I will issue that order today.

Anything defense counsel would like to raise?

MR. BELELIEU:  Nothing further, your Honor.

I would also just note for the record, the notice, the class period in the proposed notice is August 6, 2020 to October 19, 2022, and in the first paragraph of the complaint I think there's a typo, and it reads August 6, 2022 to October 19, 2022.  So there's a discrepancy between the class period in the complaint and --

THE COURT:  Yes, so why don't you, either by stipulation or by amended complaint, fix that, plaintiff's

N1PQrefC

counsel.

MS. FARAH:  We will definitely do that, yes.

THE COURT:  Very good.

Well, I look forward to further proceedings in this case.  These are always very interesting cases, and the fact that many of these actions still are lawyer-driven, when you look at it realistically, is inevitable.

So we'll see what happens.  Thanks.

MS. FARAH:  Thank you, your Honor.

(Adjourned)